UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>SAFINA N. MBAZIRA,<br><br>Debtor | ) <br> ) <br> )     Chapter 7 <br> )     Case No. 13-16586-CJP <br> ) <br> ) <br> ) |

**MEMORANDUM OF DECISION ON**
**TRUSTEE'S OBJECTION TO CLAIM OF HOMESTEAD EXEMPTION**

In the matter before the Court, chapter 7 trustee John Desmond (the "Trustee") objects [Dkt. No. 222] (the "Objection") to the Massachusetts homestead exemption claimed by debtor Safina Mbazira (the "Debtor") on three grounds: (i) that the funds in issue are the proceeds of a mortgage on the homestead property that was avoided and preserved for the benefit of the estate and, as such, cannot be claimed as exempt; (ii) that even if the proceeds could be claimed as exempt under the Massachusetts homestead statute, the Debtor would be barred from claiming them as exempt by 11 U.S.C. § 522(g)[1]; and (iii) that the Debtor having passed away during the pendency of this case, she is no longer entitled to the homestead exemption under Massachusetts law. The Debtor's interest in the claim of exemption is now held by her probate estate, which is represented by her son, Ismael Rajab ("Rajab"), as its Probate Court-appointed personal representative. Rajab asks that the Objection be overruled. For the reasons set forth below, the Court will disallow the exemption.

**I.      FACTS AND PROCEDURAL HISTORY**

On November 12, 2013, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. At the time, she owned a three-family home at 977 Trapelo Road, Waltham, Massachusetts (the "Property"), subject to two mortgages that the Debtor had given.

---

[1] Unless otherwise noted, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended (the "Bankruptcy Code" or "Code").

The first is a mortgage given by the Debtor to Mortgage Electronic Registration Systems ("MERS") as nominee for Fremont Investment and Loan on July 25, 2005, securing a promissory note of the same date in the principal amount of $528,000 (the "First Mortgage"). The present holder of that mortgage, by assignment, is U.S. Bank N.A., as Trustee relating to J.P. Morgan Mortgage Acquisition Corp. 2005-FRE1 Asset Backed Pass-Through Certificates, Series 2005-FRE1 ("U.S. Bank"). On the basis of this mortgage, U.S. Bank filed a secured proof of claim in the amount of $931,359.17. The second mortgage, like the first, is a mortgage given by the Debtor to MERS as nominee for Fremont Investment and Loan on July 25, 2005, securing a promissory note of the same date in the principal amount of $132,000 (the "Second Mortgage"). The present holder of this mortgage is unclear.[2]

In her bankruptcy case, the Debtor claimed the Property as exempt under MASS. GEN. LAWS ch. 188, § 3, in the amount of $500,000. Also, through an adversary proceeding in the case, the Debtor, then a debtor-in-possession under chapter 11, sought and, on March 31, 2015, obtained a judgment that avoided the First Mortgage under §§ 544(a)(3) and 550(a) and preserved the avoided lien for the benefit of the estate under § 551.[3] The judgment was affirmed on appeal first by the District Court and ultimately by the Court of Appeals for the First Circuit (the "First Circuit"). *See U.S. Bank, N.A. v. Desmond (In re Mbazira)*, 15 F.4th 106 (1st Cir. 2021).

On May 15, 2018, while the judgment remained on appeal, the Debtor died. On April 23, 2019, upon consideration of a motion to dismiss the case filed by the U.S. Trustee and a motion to appoint a chapter 11 trustee filed by U.S. Bank, the Court ordered the appointment of a chapter 11

---

[2] However, Claim No. 14, filed by U.S. Bank, appears to be based on the Second Mortgage.

[3] In a second count in the same adversary proceeding, the Debtor also sought a determination under § 506(a) that the Second Mortgage was wholly unsecured. The judgment entered on the first count did not also dispose of the second, which remains pending.

2

trustee, and the Trustee was appointed. As chapter 11 trustee, the Trustee moved to intervene and be substituted as appellee in the appeal then pending at the First Circuit, and that motion was granted. While the appeal remained pending, the Court, on June 12, 2019, converted the case to one under chapter 7 on the unopposed motion of the chapter 11 trustee, and the Trustee was appointed chapter 7 trustee.

On the Trustee's motion after conversion of the case to chapter 7, the Court approved his sale of the Property for $715,629.00, which amount was less than the amount due under the avoided and preserved First Mortgage. Pursuant to § 363(f), the sale order declared that the sale would be free and clear of all existing liens, claims, encumbrances, and interests, with any such liens, claims, encumbrances, and interests attaching instead to the net proceeds of the sale. The sale closed on August 16, 2019. In a limited objection he filed to the sale motion, which objection the Court overruled, Rajab asserted that, he would be entitled to payment of the Debtor's homestead exemption from the sale proceeds if the First Circuit affirmed the avoidance of the First Mortgage.

After the closing, the Trustee filed the Objection. Rajab, as the personal representative of the probate estate, responded to the Objection and argued that it should be overruled.[4] At a preliminary hearing on the Objection, the Court merely continued the matter until the then-pending appeal from the judgment avoiding the First Mortgage was resolved. Upon completion of the

---

[4] U.S. Bank also filed an objection to the claim of exemption [Dkt. No. 223], referencing certain arguments made by the Trustee in the context of the sale motion that there is no value to the Debtor's homestead because there is no equity in the Property in excess of the avoided First Mortgage interest and noting that it "joins in any objection filed by the Trustee to the Debtor's claimed homestead exemption or [Rajab's] claim to sale proceeds on account of the homestead exemption to the extent that such Trustee's objection supplements and is not otherwise inconsistent with this [o]bjection." U.S. Bank Obj., 3–4. Given that in substance it is merely a joinder in the Trustee's Objection because U.S. Bank did not make any argument in support of its objection that the Trustee did not also make, U.S. Bank's objection requires no separate disposition. Accordingly, I am treating arguments made by Rajab in response to U.S. Bank's objection as also responses to the Trustee's Objection.

I also note that U.S. Bank filed an objection to the Debtor's homestead exemption early in the chapter 11 case [Dkt. No. 37], which the court (Hillman, J.) overruled for the reasons stated in the Debtor's response [Dkt. Nos. 40 and 41].

appellate process, the Court held a second hearing at which it heard the party's arguments, arranged for the filing of further briefs, and took the matter under advisement.

## II. JURISDICTION

The Court has jurisdiction over objections to a debtor's claims of exemption, which arise under the Bankruptcy Code and in bankruptcy cases, pursuant to 28 U.S.C. §§ 157(a) (permitting district courts to provide that cases and proceedings in its bankruptcy jurisdiction be referred to the bankruptcy judges for the district) and 1334(b) (giving the district court original jurisdiction over all civil proceedings arising under title 11 or arising in cases under title 11). An objection to a claim of exemption is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(B). Accordingly, I have authority to enter a final order with respect to the Objection.

## III. DISCUSSION

A party objecting to a claim of exemption bears the burden of proving that the objection is not properly claimed. Fed. R. Bankr. P. 4003(c). The operative facts here are matters of record in this case and uncontroverted. The Trustee has articulated essentially three objections to the claim of exemption.

### a. Effect of the Debtor's Death

#### i. Arguments of the Parties

The Trustee argues that the Debtor is not eligible for the homestead exemption she claimed because she has passed away and there exists no person for whose benefit it might continue—no surviving spouse, former spouse, or minor children who occupy or intend to occupy the home as their principal residence—and, under Massachusetts law, eligibility for an estate of homestead continues after the death of the declarant only for such beneficiaries. There being none, the Trustee reasons, the estate of homestead, and the Debtor's eligibility to claim the property as exempt, terminated upon her death. The Trustee acknowledges that in a bankruptcy case, a debtor's

4

eligibility for an exemption is generally fixed and determined as of the petition date, and that the Debtor passed away years after the commencement of her case. Relying on *In re Williams*, 515 B.R. 395 (Bankr. D. Mass. 2014), the Trustee contends that this rule is subject to an exception, such that when an exemption claimed under state law contains a limitation that does not conflict with the Bankruptcy Code and its policies, that limitation should be enforced. The Trustee further maintains that the limitation in question does not conflict with the Bankruptcy Code or its policies because after a debtor's death, the purpose of the homestead can no longer be fulfilled. Allowing this exemption would only benefit the Debtor's adult heirs, who would not otherwise benefit under the Massachusetts homestead statute, to the detriment of her creditors.

Rajab responds that the rule is clear, as articulated in *Pasquina v. Cunningham (In re Cunningham)*, 513 F. 3d 318, 324 (1st Cir. 2008) and other cases, that a debtor's eligibility for an exemption is determined as of the date of the bankruptcy filing. He also points out that *Williams* did not involve the death of a debtor and contends that, under all cases that have addressed the issue, the death of a debtor has not been construed as cause to depart from the general rule. He further argues that Fed. R. Bankr. P. 1016 ("Death or incompetency of the debtor shall not abate a liquidation case under chapter 7 of the Code. In such event, the estate shall be administered and the case concluded in the same manner, so far as possible, as though the death or incompetency had not occurred.") is cause to address the homestead exemption as if the Debtor's death had not occurred.

   **ii. Analysis**

The Court's determination of the controversy in this case is guided by the First Circuit's holdings in *Cunningham* and later in *In re Rockwell*, 968 F.3d 12, 21 (1st Cir. 2020), *cert. denied sub nom. Hull v. Rockwell*, 141 S. Ct. 1372 (2021). In *Cunningham*, a creditor had argued that the debtor's post-petition voluntary sale of certain exempt property had made the proceeds of the sale

5

available to satisfy a nondischargeable pre-petition debt.[5] The First Circuit viewed this position as "at odds with the immunizing effect of § 522(c)," *In re Cunningham*, 513 F.3d at 323, under which, as a general rule, property exempted under § 522 "is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case," 11 U.S.C. § 522(c). The court held that "[i]t is a basic principle of bankruptcy law that exemptions are determined when a petition is filed." *In re Cunningham*, 513 F.3d at 324.

As to this general proposition, there is widespread agreement. *See, e.g., Wolfe v. Jacobson (In re Jacobson)*, 676 F.3d 1193, 1199 (9th Cir. 2012) ("Under the so-called 'snapshot' rule, bankruptcy exemptions are fixed at the time of the bankruptcy petition"), citing *White v. Stump*, 266 U.S. 310, 313 (1924) (in a Bankruptcy Act case, concluding that the date of the filing of the petition is the date as of which to determine exemptions); *Zibman v. Tow (In re Zibman)*, 268 F.3d 298, 302 (5th Cir. 2001) ("Any exemptions claimed, however, are determined by the facts and the law as they exist on the date of filing the bankruptcy petition.").

The issue is when, if ever, postpetition events that might cause an exemption to be lost under state law (making it a "vanishing exemption") may change the status of the exemption in bankruptcy. While not squarely addressing a vanishing exemption in determining whether proceeds of a post-petition sale were available to satisfy a nondischargeable pre-petition debt, the First Circuit in *Cunningham* elaborated on the importance of the petition date as a fixed point of determination:

> To interpret § 522(c) as conferring merely an ephemeral exemption, subject to post-termination events, would undermine that basic principle [*i.e.*, the "basic principle of bankruptcy law that exemptions are determined when a petition is filed"] and its relationship to the

---
[5] The Massachusetts homestead statute when *Cunningham* was decided did not exempt proceeds recovered from a sale of the homestead. *In re Rockwell*, 968 F.3d at 21 n.5 (citing *In re Cunningham*, 513 F.3d at 321).

6

> fresh start policy of the Bankruptcy Code . . . . The Bankruptcy Code
> facilitates a fresh start, in part, by allowing property properly
> exempted under § 522 to be immunized against liability for pre-
> petition debts. The efficacy of the fresh start policy requires finality
> that allows a debtor to rebuild his life without fear of lingering
> creditors.

*In re Cunningham*, 513 F.3d at 324 (citation omitted). The First Circuit held that the petition date governs, notwithstanding later events that under state law would discontinue the exemptability of the asset in question.

This reading in *Cunningham* is consistent with that in *Rockwell*. *In re Rockwell*, 590 B.R. 19, 28–29 (Bankr. D. Me. 2018), aff'd sub nom. *Hull v. Rockwell*, 610 B.R. 1 (D. Me. 2019), aff'd sub nom. *Hull v. Rockwell (In re Rockwell)*, 968 F.3d 12 (1st Cir. 2020). In *Rockwell*, the chapter 13 debtor had sold an exempt homestead during his chapter 13 case but failed to reinvest the proceeds in a new residence within six months of the sale. Under Maine law, this would have caused the proceeds to lose their exempt status. Upon conversion of the case to chapter 7, the chapter 7 trustee argued that the failure to timely reinvest proceeds was cause to disallow the exemption in bankruptcy. The bankruptcy court was faced with deciding between two versions of the rule that exemptions are determined as of the petition date, the so-called "snapshot rule": the "partial snapshot rule," under which the petition date governs, but subject to conditions in the state law under which the exemption is claimed, such that subsequent events may cause the exempt asset to lose its exempt status; and the "complete snapshot rule," under which the petition date governs notwithstanding conditions in state law and subsequent events. *See id.* at 25–27. The court concluded that the "complete snapshot rule" was required "to protect the integrity of the Code (e.g. § 522(c), § 522(k), § 541) and to follow the guidance of *Cunningham*" and, accordingly, held that the proceeds of the homestead property remained exempt notwithstanding state law that would have caused the exemption to vanish. *Id.* at 29.

7

The First Circuit confirmed this reading of *Cunningham* by itself affirming *Rockwell*:

> Though we did not address the rule by name, our approach in *In re Cunningham* was compatible with the complete snapshot rule, when we held that because the exemption was proper on the day Cunningham filed for bankruptcy, Cunningham's interest in that asset was "permanently immuniz[ed]" from pre-petition debt collection, even if he later sold that homestead. [*Cunningham*, 513 F.3d] at 322-325. Our analysis does not differ here.

*In re Rockwell*, 968 F.3d at 21. The Court of Appeals elaborated on its reasoning:

> "Property that is properly exempted under § 522 is immunized against liability for prebankruptcy debts, subject only to a few exceptions." *In re Cunningham*, 513 F.3d at 323; *accord* 11 U.S.C. § 522(c)(1)-(3). The Code enumerates those exceptions, where property that is properly exempt on the day of filing (here, the day the snapshot is taken) can be later incorporated into the estate (because the snapshot was only partial and can therefore be edited). See 11 U.S.C. § 522(c). "Those exceptions include: (1) debt from certain taxes and customs duties, (2) debt related to domestic support obligations, (3) liens that cannot be avoided or voided, including tax liens, and (4) debts for a breach of fiduciary duty to a federal depository institution." *In re Cunningham*, 513 F.3d at 323. Therefore, we must conclude that the complete snapshot rule applies to homestead exemptions taken pursuant to § 522, where none of the statute's enumerated exceptions applies.

*In re Rockwell*, 968 F.3d at 20. As it had in *Cunningham* without explicitly calling it a snapshot rule, the First Circuit observed in *Rockwell* that the complete snapshot rule implemented the fresh start policy that informs the Bankruptcy Code. *Id*. at 20–21. The court noted that, in effect, its ruling was reading the six-month limitation out of the Maine statute, but it held that this was not cause to alter the result stating "[f]rom our perspective, that is what the Code requires." *Id.* at 22.

The case on which the Trustee relies, *Williams*, predates *Rockwell* but not *Cunningham* and approached the issue from a different perspective. The case involved a debtor who came into bankruptcy with the exempt proceeds from the sale of her marital home. The proceeds were exempt on the petition date; but under the Massachusetts homestead statute, they would lose their exempt status if not reinvested in a new home within one year of the sale. That deadline passed after her

8

bankruptcy filing without reinvestment. The issue was whether the passing of the deadline without reinvestment terminated the exempt status of the asset in the bankruptcy case. In that decision, the court carefully considered whether federal law, as set forth in § 522(c), effectively preempted the portion of the state homestead statute that would have caused the proceeds to lose their exempt status. Preemption occurs, the court reasoned, only when the exemption directly conflicts with the Code. *In re Williams*, 519 B.R. at 407. Finding no direct conflict with little discussion, that court ruled that the exemption terminated in the bankruptcy case by virtue of the debtor's nonreinvestment of the proceeds by the postpetition deadline.

It is difficult to reconcile the ruling in that case with *Rockwell*, which, like *Williams*, involved an exemption in proceeds that would vanish for failure to reinvest. On these virtually identical facts and similar state law exemption statutes, *Rockwell* held that the status on the date of the petition governed, regardless of trailing considerations that may be relevant under state law. It did not employ the preemption analysis that *Williams* applied. And it held that the Bankruptcy Code's fresh start, as implemented through the complete snapshot rule, did conflict with the state statute; it would follow that even under *Williams*' preemption analysis, the portion of the state statute that would have caused the exemption to terminate would be deemed preempted, regardless of how this impacted the state exemption in bankruptcy. Per *Rockwell*, "[t]hat is what the Code requires." *In re Rockwell*, 968 F.3d at 22.

The reasoning of *Cunningham* and *Rockwell* should govern here. Under both, the status of the exemption was determined as of the petition date, on which the Debtor was undisputedly alive. This holding is in accord with most reported decisions that have addressed the effect of a debtor's death on a state exemption claimed in bankruptcy. *See, e.g., Armstrong v. Peterson (In re Peterson)*, 897 F.2d 935, 937 (8th Cir. 1990) ("only the facts existing on the date of filing are relevant to determining whether a debtor qualifies for a claimed exemption;" accordingly, debtor's

9

death after bankruptcy filing did not cause homestead to lapse, notwithstanding that it would have done so outside of bankruptcy under North Dakota law); *Ohanian v. Irwin (In re Irwin)*, 338 B.R. 839, 851 (E.D. Cal. 2006) (it is well settled that a claimed exemption, if valid at the time of filing, survives the death of the debtor); *In re Friedman*, 38 B.R. 275, 275–76 (Bankr. E.D. Pa. 1984) (the right to claim the exemption on behalf of the debtor-husband vested at the time the debtors filed their petition; and the debtor-husband's subsequent death did not alter the claim of exemption); *In re Doyle*, 209 B.R. 897, 907 (Bankr. N.D. Ill. 1997) (a debtor who dies post-petition is entitled to claims of exemption). I conclude that the death of the Debtor is not cause to disallow her exemption.[6]

    b.   **Proceeds of Mortgage Preserved under Section 550**

        i.   **Arguments of the Parties**

As his second basis of objection, the Trustee argues that the Debtor is not entitled to the sale proceeds because they are payable to the estate as the holder of the First Mortgage, not as the owner of the Property. Citing *DeGiacomo v. Traverse (In re Traverse)*, 753 F.3d 19, 21 (1st Cir. 2014), the Trustee contends that when a mortgage is preserved for the benefit of the estate under § 551, a trustee, on behalf of the bankruptcy estate, steps into the shoes of the former mortgage holder, with the same rights in the property that the mortgage holder. An exemption in the homestead property may be claimed only from the estate's equity in the property, not from the interest of a lienholder, and it is the Trustee's position that the estate remains, in essence, a lienholder. Moreover, the Trustee contends the recovered interest is a mortgage, and the Debtor cannot and has not claimed an exemption in the mortgage. What the Debtor has claimed as exempt is her interest in the Property, and, as the sale proceeds are insufficient to fully pay the preserved mortgage on the Property, the

---

[6] In so ruling, I place no reliance on Fed. R. Bankr. P. 1016. The Bankruptcy Rules, designed to govern practice and procedure in cases under title 11, "shall not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2075. It follows that the rules should not be a basis for construing the substantive law.

value of the Debtor's interest is zero until the mortgage is paid in full. All the value is in the mortgage, which the Debtor has not and cannot claim as exempt.

In response, Rajab acknowledges that the Debtor has not claimed an exemption in the preserved mortgage and does not contend that she would be entitled to claim the preserved mortgage as exempt. At the same time, he does not deny that the proceeds in issue derive entirely from liquidation of the preserved mortgage. He argues that under Massachusetts law, the preserved mortgage was terminated upon sale of the property and payment of the sales proceeds to the Trustee, such that the Trustee is no longer a substitute mortgagee and the proceeds are now simply property of the estate. It follows, Rajab implies, that the protection that § 551 imparted to those proceeds, at least as against the Debtor's exemption, was temporary and has lapsed, such that the proceeds are now simply the estate's equity in the Property, and the Debtor may claim them as exempt.

####     ii. Analysis

Before proceeding, it is important to be clear about the what the Debtor has claimed as exempt and what Rajab is now arguing that exemption entitled the Debtor. The only claim of exemption the Debtor has ever filed is a claim to exempt her interest in the Property; no separate claim of exemption has ever been (or could have been) claimed as to the First Mortgage or its proceeds. Nonetheless, Rajab now argues that that claim of exemption entitles the Debtor to the proceeds from sale of the Property, notwithstanding that, as he concedes, upon the avoidance and preservation of the First Mortgage, the estate acquired the First Mortgage as a distinct asset from the Debtor's own interest in the Property, and that the proceeds do not exceed the amount of that lien. Rajab contends that, upon the Trustee's sale of the Property free and clear of liens, the First Mortgage ceased to exist, and therefore the proceeds of that mortgage ceased to be proceeds of the mortgage and became simply the estate's equity in the Debtor's interest in the Property. In the

Trustee's view the Debtor is impermissibly attempting to use an exemption in an asset that has no value as a means of reaching a separate asset as to which the Debtor has no right to claim an exemption. It is necessary, therefore, to understand the nature of the estate's interest in the First Mortgage and that it cannot be—and has not been—claimed as exempt.

The commencement of a bankruptcy case creates an estate. 11 U.S.C § 541(a). Subject to exceptions not applicable here, that estate includes all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1) (the estate includes, "[e]xcept as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case"). By virtue of this subsection, the Debtor's interest in the Property became property of the estate upon the commencement of the case. At the time, however, the Debtor did not own all the existing interests in the Property. Rather, the Property was encumbered by and subject to the First Mortgage and Second Mortgage, each of which was an interest in the Property that belonged to another entity. These interests did not belong to the Debtor and, therefore, did not become property of the estate through § 541(a)(1). In view of the sale price of the Property and the amount owing on the First Mortgage, it is evident, and undisputed, that all the value in the Property was attributable to the First Mortgage.

The bankruptcy estate also includes "[a]ny interest in property that the trustee recovers under section . . . 550 . . . of this title," 11 U.S.C. § 541(a)(3), and "[a]ny interest in property preserved for the benefit of . . . the estate under section . . . 551 of this title," *Id*. § 541(a)(4). When the Debtor, as debtor-in-possession, obtained a judgment avoiding the First Mortgage, she was exercising the rights and powers of a trustee under §§ 544(a)(3) and 550(a) of the Bankruptcy Code. *See id*. § 1107 (subject to exceptions not applicable here, giving a debtor in possession the rights and powers of a trustee serving in a case under chapter 11); § 544(a)(3) (granting to "the trustee" certain rights and powers); and 11 U.S.C. § 550(a) ("to the extent that a transfer is avoided under

12

section 544 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred"). Because the debtor-in-possession was, as the estate fiduciary, exercising the rights and powers of a trustee under §§ 544(a)(3) and 550(a), the avoided mortgage is, within the meaning of § 541(a)(3), an interest in property "that the trustee recovers under section 550." The same interest, having also been preserved for the benefit of the estate under § 551, is also property of the estate under § 541(a)(4). The avoided and preserved First Mortgage thus became property of the estate through § 541(a)(3) and (4).

Rajab does not dispute this. He also concedes that, under the First Circuit's decision in *Traverse*, the estate succeeded to the avoided First Mortgage, and the mortgage itself became property of the estate, as a mortgage.

In *Traverse*, the chapter 7 trustee had succeeded in avoiding the first mortgage on the debtor's homestead and preserving the same for the benefit of the estate under § 551. The First Circuit examined whether the trustee was free to sell the property, as a means of liquidating the preserved mortgage, where the Debtor had claimed the property as exempt and the property held no value for the estate except through the mortgage. That is, after payment of the first mortgage and the exemption to which the Debtor was entitled, the sale price would be insufficient to yield equity for the estate. The First Circuit held that, in those circumstances, the Trustee was not free to sell the property. That holding is not relevant here, but in reaching this conclusion, the court explained what it means for a mortgage to be preserved for the estate.

The First Circuit stated that "[the trustee's] right of preservation under 11 U.S.C. § 551 automatically preserves the benefit of the avoided interest for the estate by putting the estate in the shoes of the creditor whose lien is avoided." *Traverse*, 753 F.3d at 26 (internal quotation and citation omitted). The trustee's preservation of the mortgage "is not co-extensive with an ownership right over the underlying property. Under § 551 . . . [the trustee] preserves the benefit of only that

13

Case 13-16586    Doc 336    Filed 08/24/22    Entered 08/24/22 16:36:00    Desc Main
Document      Page 14 of 19

which has been avoided—in this case, the mortgage." *Id.* at 27. "Preservation gives the bankruptcy estate an exclusive interest in the avoided lien, but it does not give the estate any current ownership interest in the underlying asset." *Id.* In itself, the mortgage includes no right of immediate ownership of the debtor's property. *Id.* at 29.

On the basis of these holdings in *Traverse*, it is clear that (i) the preservation of an avoided mortgage under § 551 gives the estate the rights of, and only the rights of, the mortgage holder under the mortgage, (ii) the interest preserved is a different interest in the underlying property from the debtor's interest in it, and (iii) the preservation of the mortgage does not somehow expand the interest in the underlying property included in a debtor's estate under § 541(a)(1). Though both are interests in the same real property, they are distinct and separate assets of the bankruptcy estate.

It does not appear that Rajab disputes any of this. Rather, he argues that by virtue of the Trustee's sale of the Property and the payment of the proceeds to the Trustee as the mortgage holder, the Mortgage was terminated, and the proceeds of the mortgage thereupon became simply proceeds of the sale of the Debtor's interest in the Property. Though he offers authority for the proposition that the sale terminated the mortgage, he offers none for the more difficult contention that proceeds of one thing, the mortgage, somehow morphed into proceeds of another, the Debtor's interest.

For purposes of argument, I will accept, without deciding, that the mortgage interest was "terminated" by the sale of the Property free and clear of liens, and that the Trustee has received the proceeds for the benefit of the estate. Still, this does not change the fact that the proceeds are proceeds of the First Mortgage. Under Massachusetts law, a mortgagee, by virtue of the mortgage, has title to the property. *See U.S. Bank Nat. Ass'n v. Ibanez*, 941 N.E.2d 40, 51 (Mass. 2011) ("in a 'title theory state' like Massachusetts, a mortgage is a transfer of legal title in a property to secure a debt"); *Vee Jay Realty Tr. Co. v. DiCroce*, 277 N.E.2d 690, 692 (Mass. 1972) ("This court has

14

consistently held that a mortgagee has legal title to the mortgaged real estate."). After the granting of the mortgage, what the mortgagor owns is limited to an equitable interest in the same property, including the equity of redemption. *Ibanez*, 941 N.E.2d at 51 ("when a person borrows money to purchase a home and gives the lender a mortgage, the homeowner-mortgagor retains only equitable title in the home"); *Maglione v. BancBoston Mortg. Corp.*, 557 N.E.2d 756, 757 (Mass. App. Ct. 1990) ("The mortgage splits the title in two parts: the legal title, which becomes the mortgagee's, and the equitable title, which the mortgagor retains . . . . So it is that the mortgagor retains an equity of redemption."). Accordingly, the avoided mortgage, preserved for the estate, was title to the Property, held to secure payment of the underlying debt. Because the sale proceeds did not exceed the amount of that debt, they inured entirely to the benefit of the mortgage, and not to the benefit of the Debtor's separate equitable interest in the same property. All the value is attributable to the mortgage and there is no value to the equity of redemption.

The Court's sale order expressly provided: "[t]he Sale shall be free and clear of all existing liens, claims, encumbrances, and interests, including any of the Debtor's interest, with such liens, claims, encumbrances and interests attaching to the net proceeds of the sale of the Real Property as set forth in the Sale Motion."[7] In so providing, the sale order made clear—if it was not already—that the proceeds of the mortgage remained subject to the rights of the lienholders to the proceeds, to the same extent and with the same validity and priority as those rights attached to the collateral before its sale. The proceeds attributable to the First Mortgage are not properly viewed as proceeds of the sale of the Debtor's interest in the Property, which interest is comprised of a right of redemption and any value in excess of the aggregate value of existing liens, including the First and

---

[7] In relevant part, the sale motion stated: "[t]he sale of the Property is to be free and clear of all liens, claims, encumbrances, and interests, including the disputed claims of U.S. Bank, J.P. Morgan Chase, and the Debtor's purported homestead, with any such lien or interest in the Property, when established, attaching to the sale proceeds as set forth herein." Trustee's Sale Motion [Dkt. No. 137], 5.

15

Second Mortgages. The proceeds constitute the liquidated value of the First Mortgage. Their character is not altered by the "termination" or a sale free and clear of the mortgage with liens ordered to attach to the proceeds of sale. If taken to its extreme, the Debtor's argument could have the result of dramatically affecting the rights of mortgagees where property is sold during a bankruptcy case and the debtor has claimed a homestead exemption.

Because the estate, as holder of the First Mortgage, must be paid the proceeds of the sale on account of the First Mortgage, those proceeds are not allocable to a sale of the Debtor's interest in the Property that would be subject to the Debtor's claim of homestead exemption. The Debtor's equity of redemption had no value as of the petition date. The proceeds paid to the estate on account of the First Mortgage remain subject to that lien and are an asset in which the Debtor has not claimed and could not claim an exemption. Accordingly, the Trustee is entitled to an order disallowing the exemption as a claim to the proceeds.

c. **Section 522(g)**

  i. **Positions of the Parties**

The Trustee further objects to the claim of exemption, as a claim to the proceeds, on the basis of § 522(g). Under that subsection, he argues that a debtor may claim an exemption in property recovered by a trustee—or, as here, by a debtor in possession exercising a trustee's powers—under §§ 550 or 551 only in the circumstances permitted by § 522(g), but no such circumstances exist here. Rajab has not responded to this argument. He does not mention § 522(g) or address the argument that it bars the Debtor from exempting the property and value recovered through the adversary proceeding.

  ii. **Analysis**

As a general rule, a debtor may claim property of the estate as exempt regardless of how it became property of the estate. *See* 11 U.S.C. § 522(b)(1) ("Notwithstanding section 541 of this

16

title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection."). That general rule is subject to the exception in § 522(g). It states:

> Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—
>
> (1)(A)  such transfer was not a voluntary transfer of such property by the debtor; and
>   (B)  the debtor did not conceal such property; or
>
> (2)  the debtor could have avoided such transfer under subsection (f)(1)(B) of this section.

*Id.* § 522(g). "The purpose of section 522(g) is to prevent a debtor from claiming an exemption in recovered property which was transferred in a manner giving rise to the trustee's avoiding powers, where the transfer was voluntary or where the transfer or property interest was concealed." *Russell v. Kuhnel (In re Kuhnel)*, 495 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Zubrod v. Duncan (In re Duncan)*, 329 F.3d 1195, 1201 (10th Cir. 2003)).

This exception applies if the property in issue is "property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title." 11 U.S.C. § 522(g). The First Mortgage was recovered under § 550(a) and preserved for the benefit of the estate under § 551 by the debtor-in-possession, as estate fiduciary, exercising the rights of a trustee. Because the debtor-in-possession was exercising the rights and powers of a trustee, the First Mortgage is "property that the trustee recover[ed] under section … 550 and 551 … of this title" within the meaning of § 522(g), so that exception applies here.

Section 522(g) permits a debtor to exempt such recovered property in only those circumstances identified in its paragraphs (1) and (2). The first requires (in part) that "such transfer

17

was not a voluntary transfer of such property by the debtor." 11 U.S.C. § 522(g)(1). Here, the transfer, the Debtor's granting the First Mortgage, was a voluntary transfer, the mortgage being a voluntary conveyance of an interest in the Property. The Trustee alleges, and Rajab does not deny, that granting the mortgage was a voluntary act of the Debtor; and mortgages are by their nature consensual. It follows that paragraph (1) does not apply here. The second paragraph requires that "the debtor could have avoided such transfer under subsection (f)(1)(B) of this section." *Id.* § 522(g)(2). Section 522(f)(1)(B) permits the avoidance of nonpossessory, nonpurchase-money security interests in certain types of personalty that impair an exemption to which the debtor would otherwise be entitled. *See id.* § 522(f)(1)(B). The Debtor could not have avoided the First Mortgage under § 522(f)(1)(B) because the property in issue is real property, not personalty of any type. It follows that neither paragraph (1) nor paragraph (2) is available to the Debtor and that § 522(g) prevents her from claiming the recovered property, the First Mortgage, or its proceeds as exempt. *Accord In re Sullivan*, 387 B.R. 353, 359 (B.A.P. 1st Cir. 2008) (determining that under § 522(g), the debtor does not have an exemption right as to property preserved for the estate under § 551 when the transfer was voluntary); *In re Guido*, 344 B.R. 193, 197 (Bankr. D. Mass. 2006) (holding that the debtor was barred by § 522(g) from claiming value recovered by avoidance of second mortgage and the preservation of the same for the estate because transfer of mortgage was voluntary); *In re Ulrich*, 203 B.R. 691, 693 (Bankr. C.D. Ill. 1997) (concluding the debtor may not use § 522(g)(1) to claim an exemption in value recovered by trustee's avoidance of a security interest in a vehicle, where the lien was a voluntary transfer). This is an alternative basis on which the Trustee is entitled to an order disallowing the exemption as a claim to the proceeds.

### d. Debtor's Interest in the Property

This leaves only the claim of exemption as it pertains to the Debtor's interest in the Property. If it had any value at all, the interest would be subject to the claim of exemption, to the

extent of $500,000. *In re Dipalma*, 24 B.R. 385, 388 (Bankr. D. Mass. 1982) (finding where § 522(g) prevented debtor from claiming value of avoided security interest in boat as exempt, the debtor may claim as exempt the value of the boat in excess of the security interest). As discussed above, however, the amount of the avoided and preserved First Mortgage exceeds the amount of the proceeds, such that all the proceeds inure to the estate through the mortgage, and the Debtor's interest has no value. As the Property itself has been sold, and there is no equity in it for the Debtor's interest, the exemption attaches to nothing and therefore must be disallowed. *See generally In re Pebsworth*, 121 B.R. 600, 601 (Bankr. N.D. Okla. 1990) (sustaining objection to claim of exemption as to mobile home because debtor's interest had no value).

## IV.   CONCLUSION

For the reasons set forth above, I will by separate order sustain the Trustee's Objection and disallow the claim of exemption as against both the proceeds of the First Mortgage and the Debtor's interest in the Property.

By the Court,

Date: August 24, 2022

Christopher J. Panos
United States Bankruptcy Judge